MANHATTAN CONST. CO. v. OKLAHOMA TAX COMMISSION.

No. 33660.    Jan. 23, 1951.

Rehearing Denied June 26, 1951.

*233 P. 2d 279.*

Richardson, Shartel & Cochran and F. M. Dudley, Oklahoma City, for plaintiff in error.

R. F. Barry, W. F. Speakman, and E. J. Armstrong, Oklahoma City, for defendant in error.

CORN, J. This is an appeal by Manhattan Construction Company, herein referred to as appellant, from an order of the Oklahoma Tax Commission, herein referred to as Commission, denying its claim for a refund because of an alleged overpayment of its state income tax for the year 1942 and denying its protest in part against the assessment of additional income tax against it for that year.

The claim for refund is made under the provisions of 68 O. S. 1941 §873, subdivisions (c) and (d).

The main facts are stipulated. It is stipulated appellant's taxable year is the calendar year and keeps its books on the cash receipts and disbursement basis. On December 30, 1942, it delivered to the Commission a cashier's check in the sum of $50,000, together with a statement estimating its tax liability for that year to be $50,000, and enclosed a letter advising the Commission that the check was in payment of its income tax liability for that year. On the same day the Commission notified appellant's attorney by telephone that it could not accept the check as a payment made in 1942 on its income tax liability for that year, and asked what disposition should be made of the check. The attorney in reply thereto stated that the check should be cashed and applied on the payment of its 1942 tax liability . The Commission thereafter addressed a letter to appellant in which it declined to credit the amount as a payment made in 1942 to apply on its tax liability for that year. On January 12, 1943, the Commission stamped upon the statement filed by appellant "tentative return", cashed the check and applied the amount against its 1942 tax liability. Appellant claimed the right to deduct the amount so deposited from gross income for the year 1942 as a tax paid in that year. On December 30, 1942, appellant also delivered to the Collector of Internal Revenue at Oklahoma City, Oklahoma, a cashier's check in the sum of $850,000, together with a letter dated December 29th, directing the Collector to apply the check in payment of its liability in full for the year 1942 declared value and excess profits tax, and balance to apply on its liability for 1942, normal corporate surtax and excess profit tax ratably. The collector entered the check as unidentified tax in a record known as 9P kept in his office and credited the same in the name of the appellant and deposited the check to the credit of the Treasurer of the United States. This deposit was not allowed nor was it claimed by appellant in its final Federal Income Tax report as a deduction against gross income for the year 1942, but was claimed by appellant and allowed by the Collector as a deduction from appellant's gross income for the year 1943. Appellant contends that it was entitled to have this sum, together with the $50,000 deposited with the State Tax Commission, deducted from gross state income for the year 1942. On July 3, 1943, appellant requested a ruling

from the Commission as to whether in determining its tax liability for the calendar year 1942 it be permitted to deduct the $50,000 deposited with the Commission and the $850,000 paid the Collector of Internal Revenue as taxes paid in the year 1942. In response the acting director of the income tax division wrote appellant a letter in which he stated:

"With reference to the question regarding the deductibility of the advances to the Federal and State departments before the close of the taxable year to be applied on the 1942 income tax liability, we wish to advise that under our interpretation of the law there is no basis for allowing such payments as a deduction on the 1942 return."

On September 13, 1943, after having obtained an extension of time from the Commission in which to file its return, appellant filed a complete return showing a tax liability for the year 1942 in the sum of $60,936.64 and paid upon the filing of the return $10,936.64 and the $50,000 deposit made on December 30, 1942, was applied to the payment of the balance.

Appellant in his complete return made on September 13, 1943, did not claim the amount deposited with the Commission nor the sum deposited with the Internal Revenue Collector as a deduction of gross income in 1942, but did note on its report that these payments were made in 1942. Appellant, however, did claim these payments in its 1944 returns as a deduction from 1943 gross income and such deductions were by the Commission allowed.

On November 23, 1946, the Commission made a proposed additional assessment of income taxes against appellant on its 1942 tax liability in the sum of $5,617.57. Due notice was given and appellant in due time filed a protest thereto and a hearing was had on this protest and claim for refund on the 6th day of October, 1947. The Commission after a full hearing entered its order denying appellant's claim for refund and denied in part its protest and assessed an additional income tax against it for the year 1942 in the sum of $5,212.24, together with interest thereon at the rate of 6 per cent per annum from March 15, 1943, until paid.

The above stipulated facts are all the facts necessary or essential to determine as to whether the Commission ruled correctly in denying appellant's claim for refund. Additional oral evidence was taken on the hearing of the protest against the assessment of additional tax against it for the year 1942, which phase of the case we will discuss later.

It is the contention of the Commission that, under the law as it existed in 1942, a taxpayer was not authorized to make a tentative return and pay the estimated tax as shown by such return prior to the expiration of the taxpayer's taxable year and use such payment as a deduction from gross income for the current year, while appellant contends the contrary. Its contention in this respect is based upon the concluding sentence or clause of 68 O.S. 1941 §901, subdivision (a) which provides:

"The tax, or any installment thereof, may be paid, at the election of the taxpayer, prior to the date prescribed for its payment."

This clause, standing alone and disconnected from other sections of the statute, might appear to lend support to such contention, but when construed in connection with other sections, we think it becomes quite clear that the Legislature in enacting this provision did not so intend.

68 O. S. 1941 §874, subdivision (h), provides:

"The term 'taxable year', as herein used, means the calendar year or the fiscal year ending during such calendar year, *upon the basis of which the net income is computed under this Act*."

68 O. S. 1941 §884, subdivision G, provides:

"Returns made on the basis of the calendar year shall be made on or before the 15th day of March, following the close of the calendar year. Returns made on the basis of a fiscal year shall be made on or before the 15th day of the third month, following the close of the fiscal year."

68 O. S. 1941 §901, subdivision (a), provides:

"At the time of transmitting the return required hereunder to the Commission, the taxpayer shall remit therewith, to the said Commission, the amount of the tax due under the applicable provisions of this Act, and failure to pay such tax at the time of filing the return shall cause said tax to become delinquent; however, the taxpayer may elect to pay the tax in two equal installments, *in which case,* one half *the amount of tax disclosed by the return* shall be due and payable on or before the fifteenth day of the third month following the close of the taxable year, and the balance of the tax shall be due and payable on or before the fifteenth day of the ninth month following the close of the taxable year. The tax, or any installment thereof, may be paid, at the election of the taxpayer, prior to the date prescribed for its payment."

It will be noted that under the first part of subdivision (a) a taxpayer, at the time of transmitting the return required hereunder to the Commission, shall remit therewith to the Commission the amount of tax due and a failure to pay such tax at the time of filing the return shall cause the tax to become delinquent. It will also be noted that under subdivision G of section 884, supra, a taxpayer may not file his return until after the close of the taxable year. Under the second part of subdivision (a), supra, he may, however, elect to pay the tax in two equal installments, *in which case* one-half of the amount *as disclosed by the return* shall be due and payable on or before the 15th day of the third month *following the close of the taxable year,*

and the balance on or before the ninth month *after the close of the taxable year.* Such taxpayer may, however, elect to pay the first installment or the entire tax as disclosed by the return prior to the 15th day of the third month after the close of the taxable year, the date prescribed for its payment, and the balance on or before the 15th day of the ninth month after the close of the taxable year.

Under the statute as existed in 1942 a taxpayer was not privileged to file a return and pay the tax thereby estimated prior to the close of the calendar year, nor did there then exist any statute which would require the Tax Commission to accept a tentative return and a payment made thereon prior to the close of the taxable year, as a payment of taxes made for the current year. The taxpayer, however, was not required to make his return or pay his taxes for the current year until the 15th day of the third month following the close of the taxable year. He could, however, elect to file his return any time after the close of the calendar year and before the 15th day of the third month thereafter and pay the tax as disclosed by that return prior to the 15th day of the third month after the close of the taxable year, the time prescribed for its payment.

The $50,000 check tendered by appellant on December 30, 1942, did not constitute a payment of its tax liability in that year, but simply constituted a deposit to be applied on the tax after the close of the taxable year and upon the filing of a return containing information upon which tax liability could be computed, as provided by 68 O. S. 1941 §884, subdivisions A and F, and appellant was not therefore entitled to deduct the amount as taxes paid in that year. What is above stated also applies to the $850,000 deposited by appellant with the Collector of Internal Revenue on December 30, 1942. The Collector, under a section of the federal statute similar to subdivision (a) of section 901, supra, did not allow

the amount so deposited as a deduction from gross income for the year 1942 as taxes paid during that year, but did allow such amount as a deduction from appellant's gross income for the year 1943 as taxes paid during that year. The Commission also allowed both these items as a deduction from appellant's gross income for the year 1943 as state income tax paid during that year.

Appellant's claim for refund is for the sum of $54,000 because of alleged overpayment of its 1942 tax for the reason that it was not allowed to deduct these items from gross income for that year. Since these deductions were allowed in full from gross income for the year 1943, appellant in no event would be entitled to recover the entire amount claimed, and if the claim were to be allowed it would require a readjustment of the 1942 and 1943 assessments in order to arrive at the correct amount to be refunded. We, however, conclude that appellant is not entitled to any refund on the ground that it overpaid its income tax for the year 1942.

Appellant in its supplemental brief calls attention to an opinion of the Tax Court of the United States in the case of Glassell v. Commissioner of Internal Revenue, 12 T.C. 232. In that case it appears that the State of Louisiana has in its income tax statute a section similar to subdivision (a) of section 901, of our statute, supra. It appears that the taxpayer in that case made a tentative return in the latter part of December, 1944, and prior to the close of the taxable year and gave his check in payment of the estimated tax. The state tax collector accepted the check as payment made in 1944 on its 1944 tax liability and gave a receipt which contained the notation "for payment of 1944 income taxes."

The taxpayer in its federal income tax return deducted the amount so paid the state from gross income for the year 1944. The Commissioner denied the deduction. The tax court on review held the deduction proper. It, however, based its conclusion largely upon the construction placed on the Louisiana statute by the state taxing authorities. The court in its opinion calls attention to the fact that the Louisiana taxing authorities interpreted the statute to mean that a taxpayer might make a tentative return and pay the estimated tax prior to the close of the taxable year. The court, however, added that it thought the state interpretation proper.

We do not regard the cited authority as in any degree helpful in arriving at a conclusion in this case. The facts are dissimilar. The state taxing authorities of this state did not accept the tendered check as a payment made in 1942 on appellant's tax liability for that year; neither did the Commission issue a receipt so stating; nor did the federal authorities so treat the $850,000 check tendered by appellant, nor did the state taxing authorities construe the state statute as permitting a taxpayer to file a tentative return and pay the estimated tax prior to the close of the taxable year; neither did the federal taxing authorities so construe the federal statute; nor do we think that it was the intention of the Legislature that the statute as it then existed should be so construed. This is indicated by the fact that it thereafter and in the year 1947 amended subdivision (a) of section 901, supra, by inserting the following clause:

"The taxpayer may file a tentative return and pay the estimated tax due prior to the close of the taxable year, but the filing of such return and the payment of the estimated tax shall not be in lieu of any of the other provisions of this subsection." (Title 68, chap. 21b, section 12, S. L. 1947.)

Prior to the enactment of this amendment no statute existed authorizing the filing of a tentative return and the payment of an estimated tax prior to the close of the taxable year. The construction of the statute as contended for by appellant cannot be sustained.

Counsel for the Commission assert that under the stipulated facts appellant is estopped from claiming a refund because of an alleged overpayment of its taxes in 1942. We doubt that the principle of estoppel may be applied to the facts in this case; the conclusion reached, however, makes it unnecessary to definitely determine that question in this case. The question of res judicata raised by counsel is without substantial merit. See Wootten v. Oklahoma Tax Commission, 170 Okla. 584, 40 P. 2d 672.

Appellant in this appeal also attacks the order of the Commission assessing additional income tax against it for the year 1942. In its completed return filed September 13, 1943, it deducted from gross income for the year 1942 the sum of $62,234.45 paid to Atlas Insurance Company for the purchase of an insurance contract in that year to put in force a pension trust plan for its retired employees. The Commission, over protest of appellant, disallowed $50,211.41 of this amount and by reason thereof assessed additional income tax against appellant for the year 1942 in the sum of $3,012.68.

Appellant claims the right to deduct such amount under subdivision (e) of section 880, 68 O. S. 1941, which subdivision provides:

"An employer, establishing or maintaining a pension trust to provide for the payment of reasonable pensions to his employees, shall be allowed, as a deduction, only the contributions paid to such trust during the taxable year to cover pension liability accrued, on an actuarial basis, during such year;"

The Commission denied the deduction on the theory that the insurance contract issued by Atlas' constituted an ordinary paid-up annuity contract and bore no relation to pension trust insurance.

Counsel for the Commission specifically call attention to the fact that under the contract separate beneficial certificates were issued to individual employees of appellant; that the contract shows on its face after the insurance was purchased the named insured employees held and owned the insurance rights created by the terms of the insurance contract to the same extent as though they had purchased the insurance in the first instance; appellant had neither control over nor any rights in and to the insurance after it paid the premium; that no trust had ever been formed by appellant.

They contend that these provisions are inapplicable to a pension trust insurance contract and that the contract on its face clearly shows that the contract constituted no more than an ordinary paid-up annuity insurance contract.

The record discloses that on September 1, 1942, appellant adopted what it in good faith believed to be a pension trust plan and purchased an insurance contract from Atlas to put in force such plan, which contract it then construed as being a pension trust insurance contract. It is further disclosed by the record that the pension plan adopted did not meet certain requirements peculiar to the Federal Internal Revenue Code and the regulations of the Commissioner of Internal Revenue and the same was thereafter, and in the year 1944, amended so as to comply with such requirements, and as amended was thereafter approved by the Commissioner of Internal Revenue as qualifying as a pension plan under the federal law and the regulations of the Commissioner of Internal Revenue. The Commission likewise now accepted such plan as amended as complying with the income tax laws of this state.

Under the amended plan a trust was formed by appellant, trustees appointed, and a trust agreement designated as the Manhattan Trust was executed between the Manhattan Trust and the trustees. The trust instrument is a lengthy document and we do not deem it necessary to set out in detail the terms. It is sufficient for the purpose of

this case to say that the trustees were given the authority and power to obtain insurance contracts for the use and benefit of employees of appellant to put in effect the trust pension plan.

The original Atlas insurance contract was also amended by agreement of all the parties. Certain objectionable provisions of the contract were eliminated and other provisions were inserted to make the contract conform to that of a pension trust insurance contract. The contract as so amended was assigned by appellant and its employees, who had been insured thereunder, to the trustees of the Manhattan Trust, which trust now holds the contract under the terms of the trust for the use and benefit of the employees of appellant who are covered by the contract. The contract and pension plan as amended are now in full force and effect.

The initial steps for forming the pension trust plan for the benefit of employees was taken by appellant in September, 1942, and while the plan as originally adopted was somewhat imperfect, it was thereafter perfected by amendment. Appellant obtained a contract of insurance to put in effect that plan and paid the premium, and in the year 1942, this contract as originally executed contained some provisions which made it subject to the criticism leveled against it by the Commission. These provisions were thereafter, but after the year 1942, eliminated by amendment to the contract. No additional premium, however, was paid for the contract after its amendment. Notwithstanding the contract has been amended after the close of appellant's taxable year, the fact remains that it is the premium paid in 1942 and during the taxable year which gives force and vitality to the contract as amended.

If and when retirement payments are made to employees of appellant under the contract and plan as amended, they will be received as pension payments and not as annuity payments. The premium to obtain this contract was paid by appellant in the year 1942, and it was therefore entitled to have the amount so paid deducted from gross income for that year. The assessment is excessive in the sum of $3,012.68.

The order of the Commission is affirmed in so far as it denied appellant recovery on its refund claim, and reversed in part as to the order assessing additional income taxes against appellant, and the cause remanded to the Commission, with directions to refund to appellant the sum of $3,012.68, with interest thereon as provided by law.

HALLEY, JOHNSON, and O'NEAL, JJ., concur.

ARNOLD, C. J., and LUTTRELL, V.C.J., concur in affirmance but dissent as to reversal. WELCH, GIBSON, and DAVISON, JJ., concur in reversal but dissent as to affirmance.